CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 2 6 2005

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| COMMONWEALTH ASSET SERVICES, INC., *et al.*, | ) ) ) | Civil Action No. 7:05CV00256 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | MEMORANDUM OPINION |
| COUNTY OF ROANOKE, VIRGINIA, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | By: James C. Turk<br>Senior United States District Judge |

The Plaintiffs, Commonwealth Asset Services, Inc. ("Commonwealth Asset"), LaSalle Bank, N.A. ("LaSalle") and Wilshire Credit Corporation ("Wilshire") (collectively "plaintiffs") by counsel, filed a Bill of Complaint in the Circuit Court of the County of Roanoke naming the County of Roanoke ("the County"), the United States of America ("the Government") and Henry R. and Rosalie L. Stecker (the "Steckers") as defendants. Plaintiffs filed suit to remove a cloud on the title to certain real property located in the County of Roanoke. The County and the Government were joined in order that their tax liens on the property be protected. On April 29, 2005, the Government removed the case to this Court pursuant to 28 U.S.C. §§ 1442(a)(1) and 1444 (2000). The case is before the Court on the parties' cross motions for summary judgment. Upon review of the case, and after oral arguments, the Court finds that the Government's motion for summary judgment must be granted and the plaintiffs' motion denied.

I.

The facts of this case are undisputed. On January 15, 2003, the Steckers executed a deed

1

of trust to secure the payment of a contemporaneous note in the amount of $500,000 in order to purchase the real property located at 5341 Fox Ridge Road, Roanoke, Virginia ("the Property"). The deed of trust created a lien against the Property and was recorded in the Clerk's Office of the Circuit Court of the County of Roanoke. In 2005, the Steckers defaulted on the deed of trust note by failing to make timely installment payments. After this default, Commonwealth Asset was appointed as the substitute trustee for the purpose of executing the lien of the deed of trust by foreclosure sale.

On May 19, 2004, the Steckers filed a voluntary Chapter 7 bankruptcy petition. On August 19, the Bankruptcy Court granted relief from the automatic stay, permitting plaintiffs to commence foreclosure proceedings. The Steckers were granted a discharge on August 24, and have surrendered possession of the premises. After advertising the foreclosure sale as required in the note and the deed of trust, Commonwealth Asset conducted a foreclosure sale of the property on December 17, 2004. At the sale, LaSalle, by and through Wilshire, was the sole bidder offering the sum of $353,500 for the property. The sale was concluded at that price.

Commonwealth Asset delivered a trustee's deed in consummation of the foreclosure sale. That deed was recorded in the Clerk's Office of the Circuit Court of the County of Roanoke on December 29, 2004. In January, 2005, the Internal Revenue Service ("IRS") notified Wilshire that it was considering redeeming the Property. After learning of the tax lien, and the IRS' interest in redeeming the property, Wilshire sought to rescind the sale between it and Commonwealth Asset. Wilshire's practice in cases involving IRS liens is to instruct the trustee to open bids at a different figure than it does where no such lien exits. Here, since Wilshire did not learn of the lien until after the sale, it had instructed Commonwealth Asset to start the bid at a

2

lower price than it would have had Wilshire known of the lien.

Accordingly, plaintiffs allege that in order to correct this "error," they executed and recorded a "deed of correction" which reconveyed the property to Commonwealth Asset with the stated purpose of placing the "parties in their respective positions prior to the time of the foreclosure sale[.]" Deed of Correction, ¶ 6.[1] The plaintiffs intended to re-advertise and conduct the sale again. In their Motion for Judgment, plaintiffs seek an order separating legal and equitable title of the property in order to place the parties in the position they were in prior to the foreclosure sale.

After the case was removed to this Court, plaintiffs filed a motion for a temporary restraining order ("TRO") or preliminary injunction. On June 9, 2005, this Court held a hearing, in chambers, to determine if plaintiff's motion should be granted. The Court heard oral arguments, but no evidence was presented. After hearing oral argument, the Court concluded that a temporary restraining order should be issued until the Court could hear evidence as to whether the preliminary injunction should be granted. At the hearing for the preliminary injunction, the Government represented that it would not sell the property prior to July 15, 2005. Accordingly, the Court allowed the TRO to expire and denied the motion for preliminary injunction. The Government has filed a motion for summary judgment in which it argues that it properly redeemed the Property and acquired title when it tendered the check to Wilshire. The plaintiffs, in their own motion for summary judgment, however, contend that the Government did not acquire title when it tendered the check to Wilshire for two reasons: 1) the Government could

---

[1] Attached as Exhibit B to Plaintiff's Brief in Support of Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. No. 8).

not redeem the property because the sale had been rescinded; and 2) at the time of the tender, Commonwealth Asset possessed full title to the land pursuant to the deed of correction.

## II.

Upon motion for summary judgment, the Court must view the facts, and inferences to be drawn from those facts, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Nguyen v. CNA Corp.*, 44 F.3d 234, 236-7 (4th Cir. 1995). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56©. However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The parties agree that none of the facts of this case are in dispute, but that the interpretation of those facts should be decided by this Court on the cross motions for summary judgment. The Court agrees.

## III.

The Internal Revenue Code provides that, in a foreclosure sale of property encumbered by a federal tax lien, the IRS may redeem the property "within the period of 120 days from the date of such sale or the period allowable for redemption under local law, whichever is longer." 26 U.S.C. § 7425(d)(1). In order to properly redeem, the IRS must tender a check to the purchaser of the property for the amount paid by the senior lien holder, plus interest and maintenance expenses. 26 U.S.C. § 2410(d). Congress intended that the IRS be able to purchase property at distress prices and resell the property at a profit, applying the profit to the taxpayer's liability.

4

*Southwest Products Co., Inc., v. United States*, 882 F.2d 113, 118 (4th Cir. 1989) (citing *Delta Savings & Loan Ass'n v. IRS*, 847 F.2d 248, 251 (5th Cir. 1988)).

The plaintiffs have supplied the Court with no authority that would allow them to rescind a validly conducted foreclosure sale. While the plaintiffs are correct in their assertion that correction of mistakes is a normal part of business, *see, e.g. Hilliard v. Fox*, 735 F.Supp. 674, 676-77 (W.D. Va. 1990), the "error" alleged by the plaintiffs in this case is not the traditional "mistake" that would permit a party to rescind a contract. In *Hilliard*, the court ruled that, due to the mutual mistake of fact on the part of both parties, even as a result of the negligence of the payor, a contract for the sale of stock could be rescinded and the payor entitled to restitution. *Id.* Here, however, the evidence before the Court clearly shows that the alleged error made was not a mutual mistake of fact by both Commonwealth Assets and Wilshire. Rather, the alleged error was made only on the part of Wilshire.[2] Additionally, Wilshire had record notice of the tax lien[3] and should have made itself actually aware of any such liens.[4] Accordingly, the deed of

---

[2]Commonwealth Assests had knowledge of the tax lien. *See* Memorandum in Support of United States' Motion for Summary Judgment, Ex. 1.

[3]The Court is acutely aware that while claiming "error" in the calculation process because it was not aware of a duly recorded federal tax lien on the Property, Wilshire asks this Court to conclude that because the Government had record notice of the deed of correction conveying title to Commonwealth Assets, it did not correctly redeem the Property when it tendered the check to Wilshire. *See* Plaintiff's Memorandum in Support of Motion for Summary Judgment at 7.

[4]When a party bears the burden of the mistake, he cannot then rely on that mistake to rescind the contract. *See* Restatement (Second) on Contracts § 152. The Restatement (Second) on Contracts, § 154 indicates that the burden of the mistake is on a party who is "aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient." Importantly, Wilshire does not contend that it inquired about or researched whether a federal tax lien existed on the Property and mistakenly believed there was not. Wilshire, instead, considered its limited knowledge regarding the Property sufficient and proceeded accordingly.

5

correction could not have rescinded the sale such that the parties would be placed back into the position they were in prior to the sale.

Since the sale could not have been rescinded by the plaintiffs, the IRS had the right to redeem the property. *See Southwest,* 882 F.2d at 117 (holding that the IRS' redemption right is triggered by the foreclosure sale). The question then becomes whether the IRS did so properly. The Fourth Circuit has noted that "it is axiomatic that the right [to redeem] cannot be exercised against a party that does not have an interest in the subject property." *Id.* Thus, this Court must determined whether Wilshire possessed any interest in the property at the time the IRS tendered the check to Wilshire.

In its brief in support of its motion, the Government directs the Court's attention to the facts of the *Southwest* case, which, the Government contends, are similar to the facts of the present case. In *Southwest*, the plaintiff, Southwest Products, foreclosed on a deed of trust and subsequently purchased the property at the foreclosure sale for substantially less than the outstanding balance due on its note. *Id.* at 115. The IRS, thereafter, contacted Southwest Products, requesting information regarding its expenses in connection with the sale. *Id.* The day after it had supplied the information to the IRS, Southwest Products attempted to withdraw its bid, requesting that the trustee hold another foreclosure sale. *Id.* The IRS, however, tendered a check to Southwest Products who refused the tender. *Id.* at 116. Nevertheless, the IRS recorded its Certificate of Redemption with the proper authorities. *Id.* The trustee then held a second foreclosure sale, at which Southwest Products was the winning bidder, at a price substantially higher than its original purchase price. *Id.* When the IRS displayed an intent to sell the property itself, Southwest Products filed a complaint to quiet title.

6

The court in *Southwest* concluded that at the time the IRS tendered the check, Southwest Products possessed equitable title in the property and the IRS had properly redeemed that interest. In so deciding, the court considered that

> [a]llowing bid withdrawal followed by renewed bidding at a second sale would encourage foreclosing lienors, in states permitting deficiency judgments, to bid low initially in hopes of obtaining deficiency judgments and reselling at a higher market value, but to withdraw the low bid if the IRS seeks redemption, bidding higher at the second sale to thwart any redemption efforts.

*Id.* at 118.

Here, it is undisputed that the plaintiffs executed the deed of correction in order to prevent the IRS from redeeming the property at the price that Wilshire paid for it. Wilshire essentially wants a chance to withdraw its low bid. Merely because title had already passed to Wilshire in this case, doesn't distinguish the facts of *Southwest*. Allowing a purchaser to "rescind" a foreclosure sale after learning of the IRS' desire to redeem the property is no different than allowing a party to withdraw its bid.

Courts have consistently refused to allow parties to thwart the IRS' right of redemption or to hold the IRS liable for more than was actually paid at the foreclosure sale. *See also Fidelity Federal Savings Loan Ass'n v. United States*, 445 F. Supp. 683 (M.D. Tenn. 1978) (opining that a deed of correction intended to increase a bid after IRS indicated intent to redeem was not valid); *Delta Savings*, 847 F.2d at 251-51 (opining that the IRS need only pay the amount the purchaser paid for the property and not the full amount of the loan); *see also Equity Mortgage Corporation v. Loftus*, 504 F.2d 1071 (4th Cir. 1974); *Vardanega v. Internal Revenue Service*, 170 F.3d 1184, 1186-87 (9th Cir. 1999). As stated above, the facts of this case are no different. It is undisputed that the deed of correction was executed in order to prevent the IRS from taking

7

advantage of the low purchase price at the foreclosure sale, despite Congress' express intent that it be allowed to do so. *See Southwest*, 882 F.2d at 118. In light of the ruling in *Southwest*, the Court finds that the deed of correction was void and Wilshire had full title to the property when the IRS tendered the check.

As the IRS properly tendered a check to Wilshire for the amount of the purchase price, plus interest and maintenance, and filed a Certificate of Redemption with the proper authorities, the Court finds that title to the Property rests with the Government. Accordingly, plaintiffs' motion for summary judgment must be denied, and the Government's motion granted. An appropriate order shall this day issue.

The Clerk is directed to send certified copies of this Memorandum Opinion to all counsel of record.

ENTER: This 26th day of July, 2005.

James C. Turk
Senior United States District Judge